## Pittsburgh National Bank v. Schmidt

*John Smith,* for plaintiff.
*Alphonse P. Lepore, Jr.,* for defendant.

CICCHETTI, *P.J.,* July 12, 1985—This replevin action presents the issue as to whether a private towing company which, at the direction of police, has removed and stored a vehicle subject to a perfected purchase money security interest is entitled to a common-law or statutory lien for costs incurred thereby, absent the express consent of the secured party. Plaintiff Pittsburgh National Bank (herein-

after bank) obtained possession of the subject vehicle by posting a bond and writ of seizure on February 25, 1982. This court is now asked to determine whether the bank should pay towing and storage charges for the vehicle, a 1978 Ford pickup, while it was on the place of business of defendant, Robert Schmidt (hereinafter Schmidt), t/d/b/a Bob's Sunoco, from July 13, 1980 (the date of towing) to February 2, 1981, when the bank, as assignee of an Installment Sales Contract, first made written demand for possession of the vehicle following default of the purchaser, Bruce W. Hills (hereinafter Hills), on October 19, 1980. The parties have stipulated that the bank did not consent to the towing and storage and was not contacted by any party until December 2, 1980, when Schmidt telephoned the bank regarding the vehicle.

Possessory liens may arise either by statute or at common law. Younger v. Plunkett, 395. F. Supp. 702, 707 (E.D., Pa. 1975). For reasons of clarity, we will first discuss common-law possessory liens.

At common law, possessory liens are fundamentally consensual in nature, arising from an agreement, express or implied, between the owner of goods and the artisan who renders services for those goods. Associates Financial Services v. O'Dell, et al., 491 Pa. 1, 417 A.2d 604, 606 (1980); Younger, 395 F.Supp. at 707. Applying this principle, the O'Dell court declared that where an assignee of an installment sales contract and security agreement for the purchase of a tractor did not authorize its purchasers to encumber their security interest, but, rather, suggested that the purchasers personally incur expenses necessary to the maintenance of the tractor thereby allowing assignee to retain its security unencumbered, and where at the time the competing creditor entered into a contract with the pur-

chasers, the disabled tractor did not pose a threat to the public welfare and the competitor had ample opportunity to check the financial status of the tractor and arrange an appropriate method of payment, the competing creditor who hauled and stored the tractor for the purchasers was not entitled to a possessory lien on the tractor. O'Dell, 491 Pa. at 5-6, 417 A.2d at 60 (1980). In the instant case, it is clear that assignee bank did not authorize the purchaser, Hills, to encumber its security interest. The installment sales contract itself provided, under "Additional Provisions" number one, that the "Buyer agrees . . . to keep the car free of all liens for storage, services or materials," and further, ". . . not to sell, assign or encumber, without seller's prior written consent, any rights of buyer hereunder or in the car, nor grant any further security interest in the car, nor permit buyer's right therein to be reached by judicial process. . . ." It is equally clear that, conceding the power of the police to remove a disabled vehicle from a public way, the police are not thereby empowered to create a lien in favor of a private towing company which is effective against the vehicle owner without his consent. Younger, 395 F.Supp. at 707. Thus, even though a possessory lien may arise under circumstances in which the owner's assent may be reasonably implied, O'Dell, 491 Pa. at 1, 417 A.2d at 60; Meyers v. Bratespiece, 174 Pa. 119 at 121, 34 Atl. 551 (1896), the bank's assent is not to be implied merely by virtue of the police officer's direction to remove the vehicle, Younger, 395 F.Supp. at 711.

O'Dell, however, only addressed the common-law doctrine of possessory liens. O'Dell, 491 Pa. at 3, 417 A.2d at 605. The law regarding the statutory lien of a "salvor" is set forth in Chapter 73 of the Motor Vehicle Code, 75 Pa.C.S. §7301 to 7312, inclu-

sive. The Motor Vehicle Code §102 defines a "salvor" as, "A person engaged in the business of acquiring abandoned vehicles for the purpose of taking apart, junking, selling, rebuilding, or exchanging the vehicles or parts thereof." The parties have stipulated that defendant is ". . . in the business of towing and storing vehicles." Thus, defendant does not qualify as a salvor under Chapter 73, and is thus not subject to its provisions. Hence, we need not discuss the statutory lien provided by Chapter 73, since defendant is not thereby accorded the benefit of it.

Removal of an abandoned vehicle by a private towing company, as opposed to a salvor, is governed by §3352 of the Motor Vehicle Code, 75 Pa.C.S. §3352(c)(5). Clearly, this section does not require towing to be performed by a salvor, in view of the fact that removal under §3352(c) specifically requires removal to a "nearby garage" as opposed to a "storage facility" as required of salvors under §7301(d). Further, section 3352 does not designate removal to any particular location, but only to a "suitable facility." Moreover, whether the subject vehicle qualified as an "abandoned vehicle" under §102(1) of the Motor Vehicle Code would most appropriately be determined by the police officer, who evidently determined it to be so as indicated by his direction of its removal.

Plaintiff contends that §3352(d)(1) provides for a private towing company's lien in the vehicle for towing and storage charges only if the company has complied with the reporting requirements for salvors. However, §3352(c)(5) clearly states that it is the officer who must comply with the notice provisions of §3352(d). Thus, we find no merit to plaintiff's contention that §3352(d)(1) imposes such a duty upon the private towing company.

Defense counsel persuasively argues that defendant Schmidt did all that was required of him by answering the police call and towing the vehicle, and that he should not be held responsible to notify the lienholder where the statute places no such duty upon him. Further, even if the police officer failed to notify Hills in accordance with §3352(d)(1), we are of the view that such failure does not extinguish the lien imposed by that subsection in favor of the private towing company. The towing company's lien is created by the requirement of §3352(d)(1) that the owner reclaim the vehicle in the manner provided by §7306 of the Motor Vehicle Code, requiring payment of towing and storage costs, plus a $25 fee, $10 of which is to be transmitted to the Department of Transportation. Thus, §3352(d)(1) clearly contemplates payment of towing and storage costs prior to reclamation of the vehicle. In light of this, we find it inconsequential that §3352(d)(1) refers to the owner, rather than the lienholder, making payment, particularly inasmuch as §7306 allows payment by either the owner or lienholder. However, inasmuch as it has been stipulated that the bank was not contacted by any party with respect to the vehicle until December 2, 1980, we consider it inequitable to require the bank to pay towing and storage costs incurred prior to that time. The record reveals that defendant's total figure of $1,490.50 for services rendered from July 13, 1980, until February 2, 1981, included a per diem storage charge of $3.50. Applying this rate to the 60-day period from December 2, 1980, to February 2, 1981, Schmidt has a statutory possessory lien against the bank for the storage charges in the amount of $210. Schmidt's lien against the bank does not extend the towing charges, inasmuch as all towing was performed prior to December 2, 1980.

Defendant's statutory possessory lien is given priority over the plaintiff's perfected security interest by the Uniform Commercial Code. 13 Pa.C.S. §9310.

To be certain, defendant furnished his towing and storage services in the ordinary course of his business, having responded to a call from the police to do so. Plaintiff's security interest was likewise performed pursuant to 75 Pa.C.S. §1132(b), by notation thereof on the certificate of title to the vehicle. The statute giving defendant a lien upon the vehicle, §3352(d)(1), does not expressly provide a priority contrary to that of 13 Pa.C.S. §9310. Thus, defendant's statutory possessory lien takes priority over the perfected security interest of plaintiff in the subject vehicle.